IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AARON ARCHY, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 16-467-RGA |
| CONNECTIONS CSP, INC. and DR. DEROSIERS,[1] | : | |
| Defendants. | : | |

Aaron Archy, James T. Vaughn Correctional Center, Smyrna, Delaware; Pro Se Plaintiff.

Roopa Sabesan, Esquire, White & Williams, Wilmington, Delaware, Counsel for Defendants.

**MEMORANDUM OPINION**

January 9, 2018
Wilmington, Delaware

---

[1] The correct spelling is DesRosiers.

**ANDREWS, U.S. District Judge:**

Plaintiff Aaron Archy, an inmate at the James T. Vaughn Correctional Center, filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and has been granted leave to proceed in *forma pauperis*. The Court screened the complaint and amended complaint on November 4, 2016, and identified cognizable and non-frivolous clams. (*See* D.I. 9). Defendants move for dismissal. (D.I. 17). Plaintiff opposes. (D.I. 18). Briefing on the matter is complete

## BACKGROUND

Plaintiff was injured on June 11, 2014, during a fight with another inmate. (D.I. 4 at ¶ 9). His right hand was swollen, he had excruciating pain, and one of his knuckles was not visible. (*Id.* at ¶¶ 12, 13). After he used his left hand to feel his knuckle, he concluded his knuckle was fractured. (*Id.* at ¶ 13). That day he was examined by a nurse who told him there was no fracture and then he was escorted to "the hole." (*Id.* at ¶¶ 15-23).

The next morning, the pain had worsened and the hand was badly swollen. (*Id.* at ¶ 2). Plaintiff submitted a sick call slip on June 13, 2014 and, on June 14, 2014, was seen by the same nurse who had examined him on the day he was injured. (*Id.* at ¶¶ 25-26). Again, she told Plaintiff there was no fracture, but prescribed pain medication for seven days. (*Id.* at ¶¶ 27-28).

Plaintiff submitted another sick call slip on July 4, 2014 and, the next day, saw the same nurse who granted Plaintiff's request for an x-ray. (*Id.* at ¶¶ 30-32). Plaintiff's hand was x-rayed one month after he was injured. (*Id.* at ¶ 33). When Plaintiff had not

1

been told the x-ray results by August 27, 2014, he submitted a sick call slip. (*Id.* at ¶¶ 34-35). The next day, the same nurse told Plaintiff he would be seen by a physician the next week to discuss the x-ray results. (*Id.*). He was not.

On September 6, 2014, Plaintiff submitted a medical grievance for proper medical attention, and a hearing was held on September 25, 2014. (*Id.* at ¶¶ 38-39). The grievance investigation found that Dr. DesRosiers had reviewed the x-ray results on August 21, 2014 and ordered that Plaintiff be seen by an outside medical provider.[2] (*Id.* at ¶ 42; Ex. C). Plaintiff was not seen by an outside medical provider. (*Id.*).

On September 26, 2014, a repeat x-ray was ordered (apparently as result of the investigation) and Plaintiff was scheduled to see an outside medical provider. (*Id.*) The repeat x-ray was taken on September 29, 2014, and at that time Plaintiff was told that the first x-ray had been misplaced, but found, and the two x-rays would be compared. (*Id.* at ¶¶ 44, 45).

On October 9, 2014, Plaintiff was seen by Dr. DesRosiers who told him that, based upon the x-rays, the knuckle was fractured and had healed wrong and out of place, it would remain that way, and there was nothing she could do to fix the deformed knuckle. (*Id.* at ¶¶ 46-50). Dr. DesRosiers referred Plaintiff to an outside medical specialist. Plaintiff saw the specialist on October 16, 2014, and was told that the fracture had not healed properly, and the deformity and disfigurement would not have resulted had Plaintiff been treated in a timely manner. (*Id.* at ¶¶ 51-54).

---

[2]The investigation does not indicate that Dr. DesRosiers examined Plaintiff or provided any treatment upon review of the x-ray.

2

Defendants moves for dismissal (D.I. 9) pursuant to Fed. R. Civ. P. 12(b)(5) and (6) on the grounds that: (1) Dr. DesRosiers was not timely and properly served; and (2) Plaintiff fails to state claims upon which relief may be granted. (D.I. 17).

## DISCUSSION

**Service on Dr. DesRosiers**

Defendants move to dismiss the claims against Dr. DesRosiers for insufficiency of service pursuant to Fed. R. Civ. P. 4(e) and Fed. R. Civ. P. 12(b)(5), on the grounds that the service packets were delivered to a Connections' employee who is not an agent authorized to accept service on behalf of Dr. DesRosiers.

A defendant may file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint. See Fed. R. Civ. P. 12(b)(5). A plaintiff "is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). Rule 4(m) imposes a 90-day time limit for perfection of service following the filing of a complaint. Fed. R. Civ. P. 4(m). If service is not completed within that time, the action is subject to dismissal without prejudice. *Id. See also MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995).

First, the Court notes that it has been advised that it is the policy of Connections CSP, Inc. ("Connections") that it, and its employees, will not waive service as set forth in Fed. R. Civ. P. 4(d). As a result, Connection employees must be personally served with a summons and complaint. The record reflects that when neither Defendant signed the waiver of service of summons (D.I. 12, 13), summonses were issued so Defendants

3

could be personally served by the United States Marshal Service. (D.I. 14). The Court notes that in attempting to effect service, Plaintiff has complied with all court orders to serve Defendants.

Plaintiff in an incarcerated individual. As an incarcerated individual, he must rely upon the USMS to effectuate service. The USMS delivered the service packet for Dr. DesRosiers (including summons) to Theo Gregory ("Gregory") an individual employed by the defendant Connections. Defendants state that Gregory is not authorized to accept service on behalf of Dr. DesRosiers. Defendants do not indicate why Gregory accepted the service packet when he was not authorized to accept service.

Under Rule 12(b)(5), the Court has "broad discretion" in deciding whether to dismiss the complaint for insufficient service. *See Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). The Third Circuit has instructed that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Id*. Given that instruction, the court will deny the motion to dismiss for insufficient service of process.

Pursuant to Fed. R. Civ. P. 4(d), Defendants were required to waive service. They have taken the position that they will not waive service despite the fact that Rule 4(d) affirmatively imposes the "duty to avoid unnecessary expenses of serving the summons" upon the defendants. *Id*. If defendant "fails, without good cause, to sign and return [the] waiver" requested by plaintiff within a "reasonable time," the court "must impose on [defendant]": (A) the "expenses later incurred in making service"; and (B) the "reasonable expenses, including attorney's fees, of any motion required to collect those

service expenses." See Fed. R. Civ. P. 4(d)(1)(F), 4(d)(2)(A), 4(d)(2)(B). In light of the foregoing, Plaintiff will be given another opportunity to personally serve Dr. DesRosiers. Also, given both Defendants' failure to waive service of summons under Fed. R. Civ. P. 4(d) in the first instance, each served defendant will be assessed service fees as allowed by the Federal Rules of Civil Procedure.

Finally, the Court has a responsibility to assist *pro se* plaintiffs in the service of process. See *Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010). This Court has entered orders to assist *pro se* plaintiffs in obtaining addresses of defendants so that service may be effected. See also *In re Johnson*, 2001 WL 1286254 (D.C. Cir. Sept. 28, 2001) (district court ordered individual to indicate where and when he was available for service of process or to provide district court with name and address of individual authorized to accept service of process on his behalf); *Palmer v. Stewart*, 2003 WL 21279440 (S.D.N.Y June 4, 2003) (court ordered counsel for New York City to file an affidavit containing name and address to assist *pro se* plaintiff in service of process); *Garrett v. Miller*, 2003 WL 1790954 (N.D. Ill. Apr. 1, 2003) (counsel for defendants ordered to provide address to court to assist pro se plaintiff in obtaining service of process). Additionally, the Court's inherent power allows it to enter orders to manage its own affairs "so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (1962)). Without the correct address, Plaintiff cannot effect service.

Therefore, the Court will order Connections (who has been served and entered its appearance) to provide to the court, under seal, the last known home and business

5

addresses for Dr. Louise DesRosiers,[3] whether she remains employed by Connections, and, if known, the correctional facility where she is now located, so that she may be served.

**Rule 12(b)(6)**

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014)

---

[3] It is obvious that Connections or its attorneys know the whereabouts of Dr. DesRosiers given that she signed an affidavit that Gregory was not authorized to accept service on her behalf. (*See* D.I. 17-1 at 2).

6

(quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Defendants seek dismissal on the grounds that Plaintiff received medical care and, at best, has a claim for medical negligence, not a claim of a constitutional violation. They also contend that dismissal is appropriate because Plaintiff does not allege that Connections maintained a policy, custom, or practice that resulted in Plaintiff's alleged harm. Finally, Defendants seek dismissal of any proposed medical negligence claim.

The legal standard when ruling on Rule 12(b)(6) motions is identical to the standard used when screening a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).

7

I previously reviewed Plaintiff's allegations and found that he stated what appear to be cognizable and non-frivolous claims. (See D.I. 9). Nothing has changed since the court's ruling.

Without belaboring the point, the allegations are that Plaintiff's hand was fractured (a fracture can be considered a serious medical need), it was not x-rayed until a month after his injury when during that time he received minimal treatment, he was told repeatedly he would see a physician but did not see one until October 9, 2014 some four months after the injury and not until he submitted a medical grievance, and Dr. DesRosiers was aware as of at least August 21, 2014, when she read the first x-ray, that Plaintiff had sustained a fracture.

The Court has revisited the allegations, liberally construed them, as it must, and finds that Plaintiff adequately raises medical needs claims. With regard to Dr. DesRosiers, a prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Plaintiff's allegations are sufficient.

With regard to Connections, in order to hold it liable, Plaintiff must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Fletcher v. O'Donnell*, 867 F.2d 791,

8

793-94 (3d Cir. 1989)). Plaintiff's allegations are that care was repeatedly delayed by Connections personnel. It was not until Plaintiff submitted a medical grievance that he was provided care for the fracture. Construed liberally, the alleged conduct although not specifically endorsed or authorized, could be so well-settled and permanent to constitute a Connections policy, custom, or practice. Accordingly, the Court will deny the motion to dismiss for failure to state a claim upon which relief may be granted.

While there is no indication that Plaintiff raises a medical negligence claim, I will, nevertheless, grant that portion of the motion to dismiss since Plaintiff has not complied Delaware's Delaware Health Care Negligence Insurance and Litigation Act. *See* 18 Del. C. §§ 6801-6865.

## CONCLUSION

Based upon the above discussion, the Court will grant in part and deny Defendants' motion to dismiss (D.I. 17) and will order Connections to provide the last known address for Dr. DesRosiers so that she may be served.

An appropriate order will be entered